IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

       Plaintiff,

       vs.

NOAH LANDFRIED, et al.,

       Defendants.
_____

Criminal Action

No. 19-8


Transcript of proceedings on January 17, 2020,
United States District Court, Pittsburgh, Pennsylvania,
before J. Nicholas Ranjan, District Judge


APPEARANCES:

For the Government:          Craig W. Haller, Esq.

For Defendant N. Landfried
  and Defendant Jasek:      Martin Dietz, Esq.
For Defendant Allen:        Daniel Cuddy, Esq.
For Defendant Burley:       Michael DeMatt, Esq.
For Defendant Cercone:      Stephen Capone, Esq.
For Defendant Fletcher:     Marvin Miller, Esq.
For Defendant Giammichele:  Komron Maknoon, Esq.
For Defendant Korbe:        R. Damien Schorr, Esq.
For Defendant R. Landfried: James Paulick, Esq.
For Defendant Marshall and
  Defendant Kumar:          Christopher Capozzi, Esq.
For Defendant Novick:       Lee Markovitz, Esq.
For Defendant Nuara:        Steven Townsend, Esq.
For Defendant Patton:       Joseph Valenti, Esq.
For Defendant Perry:        Patrick Nightingale, Esq.
For Defendant Ramsey:       Kelvin Morris, Esq.
For Defendant Steward:      David Chontos, Esq.
For Defendant Trinh:        William Kaczynski, Esq.
For Defendant T. Williams:  Jonathan Orie, Esq.
For Defendant Wood:         Michael Worgul, Esq.

```
For Defendant Yates
   and Defendant Fielder:      Adrian Roe, Esq.
For Defendant N. Bracey:       Joseph Yablonski, Esq.
For Defendant Curran:          Alonzo Burney, Esq.
For Defendant Good:            William McCabe, Esq.
For Defendant Harris:          Lisa Mantella, Esq.
For Defendant A. Hopes:        Adam Cogan, Esq.
For Defendant T. Hopes:        Joseph Otte, Esq.
For Defendant Lindsey:         Michael Waltman, Esq.
For Defendant Massie:          Chad Vilushis, Esq.
For Defendant Middleton:       Stephen Wesley Gorman, Esq.
For Defendant Penney:          Thomas Merrick, Esq.
For Defendant Serrano:         Patrick Livingston, Esq.
For Defendant Smith:           Ryan James, Esq.
For Defendant Stevens:         Stephen Stallings, Esq.
For Defendant S. Wilson:       Robert Carey, Jr., Esq.
```

```
Court Reporter:                Richard T. Ford, RMR, CRR
                               6260 Joseph F. Weis Jr. US Courthouse
                               Pittsburgh, PA  15219
                               (412) 261-0802
```

```
Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

1          (Proceedings held in open court; January 17, 2020.)

2              THE COURT:  We are here today in United States of

3      America versus Landfried at Case 19-8.  My understanding from

4      Mr. Vahlsing is everyone has already taken attendance here, so

5      entry of appearances won't be necessary because it will be

6      made part of the record.

7              The first thing I would like to do is to hear

8      argument on the motion for a bill of particulars -- I should

9      say motions for bills of particulars filed by several

10     defendants and then joined in by a number of other defendants.

11             As you have seen from the order I entered in this

12     case, we have asked, Mr. Valenti, for you to take the lead on

13     that motion, arguing here today for the motion for bill of

14     particulars, but if anybody else from the defense side wants

15     to make additional arguments, they are welcome to do so if you

16     have joined in on the motion for a bill of particulars.  But I

17     would like to know now who may want to argue in addition to

18     Mr. Valenti.  Is there anyone else who thinks they might want

19     to argue here today?

20             All right.  Seeing nobody else, Mr. Valenti, why

21     don't you start if you can addressing the motion for a bill of

22     particulars and you can do so at counsel table if you prefer.

23             MR. VALENTI:  Sure, thank you, Your Honor.  Can

24     everyone hear me?

25             To proceed today, there are multiple reasons for a

1    bill of particulars.  Among the first reasons are the

2    constitutional reasons, fair notice, due process, protection

3    against double jeopardy.  Those are the paramount concerns

4    that a bill of particulars would protect in this case.

5              In addition to that, there are a number of

6    practical concerns related to the trial preparation,

7    streamlining this case, allowing future motions to be tied

8    back to a specific document that educates everyone as to what

9    the roles of the individuals are here.

10             In the government's own superseding indictment

11   memoranda they state that the elements of the conspiracy

12   charges that they need to prove include identifying that a

13   person entered into an agreement and they entered into that

14   agreement with at least one other person.

15             At its core, nothing in the indictment says who

16   agreed with who.  The conspiracy has not been defined as a

17   classic wheel and spoke or pyramid conspiracy.  The

18   individuals that have worked together are the ones that really

19   have to be brought to the forefront.  In addition to that,

20   dates and other key details are relevant.

21             The establishment of sufficient notice under the

22   Constitution requires that the individuals being charged have

23   an ability to prepare a defense.  In a conspiracy charge,

24   that's a crime that becomes very close to a thought crime

25   without specific attention to the details of the dates, the

1    agreements, when somebody entered into a conspiracy, because

2    that has legal effect as far as what crimes they're

3    responsible for after the conspiracy.  By definition, when a

4    conspirator enters into a conspiracy, they are not responsible

5    for what happened before they entered into the agreement.

6              Similarly, all of these arguments that protect the

7    defendants' own constitutional rights have the practical

8    effect of providing effective counsel.  There's a Sixth

9    Amendment right for the defendants to have effective counsel.

10   In order for counsel to be effective, especially when there

11   are limited resources for any law firm or defense attorney,

12   particularly one going up against the United States government

13   and the large number of resources that they have,

14   particularizing the case does assist in providing that

15   effective assistance of counsel, both by helping the attorney

16   focus and by helping the defendant assist.

17             THE COURT:  Now, what's your response to the

18   government's position that at least informally they have

19   helped, they have provided more discovery than they think they

20   are obligated to provide, they've -- the government has argued

21   that it has made itself available to address any questions,

22   they have made effectively the equivalent of an opening

23   statement to any particular defendant, and that should be

24   enough -- I think that's one of their arguments -- how do you

25   respond to that?

1            MR. VALENTI:  Respectfully, the government does not

2     give all of this information out of the goodness of its heart.

3     They are forced to turn over exculpatory evidence under Brady

4     versus Maryland, Giglio, and the progeny.

5            What has happened in the past is the government

6     would turn over the specific information that they were going

7     to use at trial and anything that could reasonably be foreseen

8     as exculpatory.

9            After a series of high profile losses throughout

10    the United States the government started to gravitate toward

11    document dumps because they were tired of defense attorneys

12    coming in and saying, you didn't turn over exculpatory

13    evidence.  Fine, we'll give you everything.  That has now

14    created the problem that we have today where massive document

15    dumps, every scrap of paper has been turned over.  To be sure,

16    the labeling here is not intuitive.

17           In addition to that, being required to trust an

18    adversary's labeling.  Let's set aside that there may be bad

19    agents or incompetent agents out there.  Just from a clerical

20    perspective, if you had the very best of intentions, you can't

21    possibly label tens of thousands of documents accurately.

22    Something will get missed.  In having that large document dump

23    and then saying, trust us, these are the three files you need

24    to read, it undermines the adversary system, especially in

25    this type of a case where many of the lawyers here were

1    appointed under the CJA and we're dealing with defendants who

2    are educated about the system and feel very much that they

3    want to get this in writing, why won't he tell me?

4         That gets me to the most important argument that we

5    have is that the bill of particulars is a document with

6    legally binding effect.  It's the equivalent of an indictment

7    or a stipulation or other filing that says, we are not going

8    to go down this path or we will look at this theory and this

9    theory.

10         The informal assurances regarding discovery, the

11    willingness to help out, the Brady tension, all of that goes

12    toward just one of the many reasons for the bill of

13    particulars.  That one reason is to assist an effective

14    defense and trial preparation.

15         THE COURT:  Now, let me ask you -- sorry to

16    interrupt.  Let me ask you this.  Looking at the cases here,

17    and the government makes this point, even in big drug

18    conspiracy cases, their argument is that as a matter of law

19    they don't have to give you much in the indictment.  All they

20    have to really do is lay out the elements of the offense

21    essentially.  I think they have argued they don't even have to

22    list a specific controlled substance.  They've listed them

23    here, but they don't even have to.  They don't have to list

24    specific co-conspirators even.  I think the law is that they

25    can just say, your client conspired with somebody else, and

1    that's enough.  But that they've, in this case, you know all

2    the co-conspirators, the time frame for the conspiracy, at

3    least generally, I think a period of years, and you know the

4    specific controlled substances identified in Count 1 of the

5    indictment.

6            What makes this case different than all the cases

7    they have cited which indicate that that's enough and no bill

8    of particulars is required?

9            MR. VALENTI:  Well, some of these controlled

10   substances were not controlled substances at all points in

11   time during the conspiracy.  If you are going to charge an

12   analog, that is basically a drug that is like a controlled

13   substance, but not specifically delineated as a controlled

14   substance.  McFadden is the case that requires that to be

15   pled.

16           The government has the ability to plead around

17   this, say —— I will use Patton as an example.  Informally if

18   they say they are only going to look Patton's conduct from

19   October 2018 onward, we don't analog issues.  But the

20   indictment reads January 2017 when we do have analog issues.

21           So again we get back to, that's nice that we can

22   get these informally assurances, but I have to take that back

23   to a defendant and he is going to ask, well, why can we trust

24   the government?  Are they bound by this?  My response to that

25   must be, no, they are not bound by this.

1              Well, how do we get them bound by this?  A bill of

2    particulars.

3              Similarly, beyond the controlled substances, when

4    we get into the nature of the specific conspirators, we have

5    pointed to a number of cases where it gets into the idea of

6    defining who you entered into the agreement with.  It is one

7    thing to say that there are a bunch of conspirators and there

8    might be foreseeable conduct.  But the element of who you

9    agreed with is a separate element.  You have to point to this

10   specific person on this specific date that you entered into an

11   agreement with.

12             Again, that's not something that necessarily comes

13   down to the date and time.  That can be proved inferentially

14   at trial.  But saying at some point in two years they agreed

15   with one of these 45 people to do bad stuff is vague.

16             The issue then becomes, a bill of particulars

17   really is a middle ground right here.  If the indictment is

18   vague, it essentially can be challenged at any point in time

19   and the case would, in the worst scenario for the government,

20   be dismissed with prejudice and criminal jurisdiction would

21   not have properly attached.

22             Raising this argument is only prudent once the jury

23   has been empaneled because that's when double jeopardy

24   attaches.

25             So without a bill of particulars we run into a

1  scenario where the government has the risk that a bunch of

2  defense counsel jump up the minute a jury is sworn in and move

3  to dismiss the indictment because it is vague, which is

4  prudent because, again, that's when double jeopardy would have

5  attached and the government would lose the ability to cure

6  with a superseding indictment.

7          Conversely, that's the exact reason none of us want

8  to jump up right now and move to dismiss the indictment

9  because we could do that and, similar to civil case law, you

10  have a great motion to dismiss and then they just amend their

11  complaint.  The government has the ability to issue yet

12  another superseding indictment.

13          If we're going to proceed under this indictment, a

14  bill of particulars really is the moderate path forward to

15  balance both the defense interest in moving to dismiss a vague

16  indictment and bringing that body of case law into play and

17  the government's ability to work around a number of issues by

18  repleading and reindicting over and over again to cure its own

19  defects.

20          THE COURT:  Just backing up on the synthetics

21  that -- and this might be even a question for Mr. Haller if he

22  knows more than you -- but the synthetics in this case are, as

23  I read the indictment, five synthetic cannabinoids pled in

24  Count 1, is that right?

25          MR. VALENTI:  Generally, yes.  It is mostly

1    synthetic cannabinoids.  There is another synthetic that's

2    probably closer to fentanyl, but most of it is synthetic

3    cannabinoids.

4         THE COURT:  With respect to the synthetic

5    cannabinoids that were not scheduled, at what point were they

6    scheduled?

7         MR. VALENTI:  Various dates.  Some of them in

8    January 2017, some of them in April, 2017.  I think there was

9    one that comes a little bit later.

10        Again, that's -- it will depend specifically on who

11   is involved with which drug to kind of brief that issue, which

12   is another reason a bill of particulars might be more

13   appropriate first before we get down that path and anyone

14   brings up those types of arguments because there will be

15   clusters of defendants that want to speak to certain drugs and

16   not others because those are the only drugs relevant to very

17   specific people.

18        Again, tying it back to Mr. Patton, we have been

19   focused on the synthetic cannabinoids because based on the

20   government's representations, which we do trust -- well,

21   counsel, Mr. Patton maybe not so much -- but like we said,

22   that's been the focus for us.  I can't speak today to some of

23   the potential fentanyl or other type of equivalents that may

24   be involved.

25        THE COURT:  The government is saying that this

1    synthetic cannabinoids is a bit of a red herring.  Let's say

2    Mr. Patton, I don't know his conduct here, is -- he had some

3    kind of agreement to distribute or arguably had an agreement

4    to distribute synthetic cannabinoids which he didn't know to

5    be the equivalent of a controlled substance prior to the point

6    in which they became scheduled.

7            The government is saying, well, it doesn't really

8    matter.  Count 1 alleges a conspiracy to distribute a host of

9    controlled substances in addition to the synthetic

10   cannabinoids, and Mr. Patton would be, so long as there was an

11   agreement, and the agreement had within its scope distribution

12   of fentanyl, cocaine, heroin, even though he didn't have

13   anything to do with it, it's in his possession, he is part of

14   this agreement, it doesn't even matter, this whole

15   controlled -- the whole analog/synthetic distinction is

16   irrelevant, so to speak.  Do you understand my question?

17           MR. VALENTI:  I do.  I would just disagree with the

18   characterization.  I do think it's highly relevant.  One, for

19   purposes of what has to be proved at trial, the knowledge

20   becomes an element if it's an analog case.  That's the clear

21   holding in the Supreme Court in McFadden.

22           Separate and apart from that, the problem is that

23   the conspiracy charges cocaine, heroin, everything else under

24   the sun.  And we get back to, do we have to prepare a defense

25   against cocaine or can we trust the representation that your

1    guy doesn't have anything to do with cocaine?

2             Similarly, the conspiracy to distribute cocaine,

3    let's go back to the government's own indictment memoranda, we

4    can use either the document at Docket 4 or the later one for

5    the superseding indictment.  But under the indictment

6    memoranda, the government notes that the United States must

7    prove the following elements beyond a reasonable doubt:

8             And they say that the controlled substance was one

9    of Schedule 1, 2, or 3 controlled substances listed in Count 1

10   of the indictment.

11            And if the controlled substance was cocaine or

12   heroin, the amount of cocaine or heroin attributable to

13   defendant as a result of defendant's own conduct and the

14   conduct of conspirators that was reasonably foreseeable to the

15   defendant was five kilograms or more of cocaine or one

16   kilogram or more of heroin.

17            The drugs are treated differently.  They have

18   different elements, different things do need to be pleaded.

19   And when you talk about a giant conspiracy reasonably

20   foreseeable, it's a touchstone.

21            Let's presuppose -- again, we recognize everyone is

22   innocent until proven guilty -- but let's presuppose someone

23   does enter into an agreement to distribute synthetic

24   cannabinoids and they enter into that agreement with three

25   other people.  If those people then go on to enter into a

1    second agreement, that is not part of the original conspiracy,

2    that's a separate conspiracy.

3            The government has not indicted multiple

4    conspiracies here.  They have indicted one conspiracy.  So

5    everything that's done that traces back to any individual

6    client has to be reasonably foreseeable under the actual

7    agreement that they entered into.  That's where we are

8    completely lacking in detail.  Who first agreed with who in

9    this case to do what?  Then who was brought in?

10           The government has tried to informally re-create

11   the structure that their agents believe exists, and honestly I

12   think there is a factual dispute.  I think the government sees

13   this as a pyramid conspiracy; I look at it more as a wheel and

14   spoke.  That's all in a separate factual debate.

15           But the core is the links between the conspirators

16   and what is reasonably foreseeable by their own papers is

17   something that the defendants are entitled to know ahead of

18   trial to prepare to address that.  Even if someone entered

19   into a conspiracy to distribute certain drugs, it is not

20   automatically foreseeable that every other crime committed by

21   every other person in that agreement is attributable to them.

22           You may into an agreement to steal a car.  You have

23   no idea that five days later somebody is going to use that car

24   to run somebody over.  Maybe you do, maybe you don't.  It gets

25   into heavily, heavily contested factual issues.  If we don't

1    know from a bill of particulars what those issues and what

2    those connections are, it deprives of an ability to

3    effectively prepare for trial.

4            More importantly, it undermines the double jeopardy

5    issue.  Let say that we, going back to Mr. Patton's example,

6    we rely on the presumption that we're trusting the government

7    that he is only involved in synthetic cannabinoids.  We say

8    nothing about cocaine at all.  We get to a jury.  He is

9    acquitted.  Then the government indicts him for a cocaine

10   conspiracy that occurred with some of these same people at the

11   same time.  Is that barred by double jeopardy?  We don't know.

12   That's the significance of these issues here today.

13           THE COURT:  I think I understand your argument.

14   Before we turn to Mr. Haller, again, I would ask if any of the

15   other defense counsel want to add or supplement anything

16   Mr. Valenti said.

17           MR. PAULICK:  Your Honor, James Paulick for Ross

18   Landfried.  I just want to address the Court.  I filed a

19   separate bill of particulars and I did note you wanted me to

20   wait until after.

21           I would -- basically my arguments would be almost

22   exactly the same as Mr. Valenti's.  So if I can incorporate

23   that for my own bill of particulars because I did not join his

24   motion.  I didn't want to stay silent.

25           THE COURT:  No, I appreciate you raising that.  I

1   know you filed a separate motion -- I am trying to remember

2   the defendant's name.  I think it's Jasek maybe filed another

3   separate motion.  I am fine if you just want to incorporate

4   what he said.  I just want to get all the arguments with

5   respect to all the motions or joinders out now so that

6   Mr. Haller can just respond in one fail swoop.  So that's fine

7   if you want to incorporate by reference what Mr. Valenti said

8   here today.

9           MR. PAULICK:  Right, Your Honor, and I would just

10  like to add a few comments.

11          THE COURT:  Go ahead.

12          MR. PAULICK:  One of the things that in addition to

13  everything that Mr. Valenti said very well is a judicial

14  efficiency here.  If we rely -- if all of us, especially us on

15  the CJA panel, if we have to -- or everybody who's on the

16  other side here, if we have to rely on a very vague -- let's

17  say that it satisfies the requirements of indictment.  Okay,

18  that's fine, but we all have a job to do to defend our

19  individual clients.

20          Although we are not asking for a bill of

21  particulars that lists the time and location and what

22  everybody said exactly how this conspiracy looked or maybe

23  multiple conspiracies, as some of us think, if we all attacked

24  this indictment, this one count of this giant conspiracy, we

25  all have to look at every single tiny piece of these 10,000

1    plus documents in a very nebulous way, time-consuming way.

2          If we have a moderate approach where we have a bill

3    of particulars, it places a modest amount of effort on one

4    side where then it could illuminate the issues for all of us

5    so that we can focus our defense appropriately for our

6    individual defendant.

7          It would save time, it would save resources, and,

8    quite honestly, it would avoid the double jeopardy issues and

9    it would probably cut down on the number of appeals because if

10   it's not granted, you know that this issue is going to

11   continue and live on forever.

12         So on top of all of his arguments, I think there is

13   an efficiency argument there as well.  What are we really

14   harming here by making the government stick to what their

15   informal positions are into a formal letter?  Yes, it does

16   hold them to a certain degree, but we all could be held to

17   certain standards in the law, and it is built into the law, it

18   is built into the rules that this is to be granted in

19   appropriate circumstances.  I think that was outlined

20   appropriately in both Mr. Valenti's and my motion and the

21   other motions as well.

22         THE COURT:  Let me ask you this.  I guess I asked

23   Mr. Valenti this question at the outset, but what you have

24   said makes a lot of sense to me.  But I know what the

25   government -- and the government is going to get up and say,

1    really the purpose of a bill of particulars is to make sure

2    that you are prepared for trial.  Mr. Haller will probably

3    say, Mr. Paulick, I can sit down with you and I can tell you

4    exactly why your client is on the hook, what documents to look

5    at.  It may not be binding on the government, but it will make

6    your life easier.  Is really the only distinction that it is

7    not boxing the government in so you and your client can't

8    really trust what they say and will have to review the 10,000

9    files?  Is that really the response?  How do you respond to

10   Mr. Haller saying it's informally through discovery, through a

11   sit-down, through different statements you won't be surprised

12   going into trial?

13          MR. PAULICK:  Your Honor, the only thing I would

14   say in response is I think the binding effect is of utmost

15   importance.  I don't think it is the only reason to require a

16   bill of particulars, but it is a big one.

17          I trust when I'm dealing with Mr. Haller he is

18   dealing with me in good faith, and that's fine, but I cannot

19   rely on that good faith and take that to my client and say,

20   here's what our strategy is going to be for trial because we

21   can rely on the representations I had in private conversations

22   with Mr. Haller.  That's not going to fly.  That's why we need

23   this bill of particulars.

24          Especially for these clients who in this case --

25   and this a discretionary thing for a reason, these clients are

1    sophisticated.  These guys have been studying law for ten

2    years in lockup.  They're not stupid.  And in this kind of a

3    case it's extremely important.

4              That's all I have, Your Honor.

5              THE COURT:  Thank you, Mr. Paulick.  Anybody else

6    before I turn it over to Mr. Haller?

7              MR. DIETZ:  Your Honor, just briefly.

8              THE COURT:  What is your name?

9              MR. DIETZ:  Martin Dietz.  I am here on behalf Noah

10   Landfried, but also standing in for Wendy Williams on behalf

11   of Mr. Jasek.

12             Just for purposes of continuity, because you

13   referenced this, Ms. Williams filed her own separate motion.

14   She would adopt the arguments made by prior counsel today.

15             THE COURT:  Thank you.  I appreciate that,

16   Mr. Dietz.  Then over here.

17             MR. MARKOVITZ:  Thank you, Your Honor, Lee

18   Markovitz for Harold Novick.  Just a couple quick points.

19             This indictment is a little bit different than most

20   drug conspiracy indictments in federal court.  There are so

21   many defendants and so many controlled substances alleged.

22             The second thing is when you judge this motion,

23   don't think about what the defense lawyer needs.  Think about

24   what the defendant needs.  It is very different.  To sit down

25   with the prosecution and they'll say this and this and this to

1    a lawyer, think about the ability of a defendant to understand

2    the nature of the charge against him because that's really the

3    core of what this is about.

4              THE COURT:  Okay.  I appreciate that.  Thank you.

5              Mr. Haller, if you would you like to respond to the

6    various arguments, I would appreciate it.

7              MR. HALLER:  Yes, Your Honor.  I will stay seated

8    so I can speak into the microphone.

9              THE COURT:  Certainly.

10             MR. HALLER:  Your Honor, Mr. Patton, Mr. Jasek,

11   Ross Landfried, they want a bill of particulars to have the

12   locking in effect to lock the prosecution into a theory of the

13   case.  I don't think there is any -- certainly not after what

14   we just heard this morning, but even walking in here today it

15   was obvious that's what this is at its core about.

16             Locking in the prosecution through a bill of

17   particulars is an effect of a bill of particulars.  It is not

18   a justification for one.  There has to be a separate

19   justification for it.

20             There is no dispute in this case that ordering a

21   bill of particulars can be a discretionary judicial act.  The

22   question is how much discretion the Court has and what would

23   be an abuse of that discretion.

24             There is not as much discretion for this Court to

25   order a bill of particulars, particularly -- it is not just a

1    bill of particulars.  They're asking for specific things.  You

2    could order a bill of particulars; it is not something that

3    just floats around in the air.  It is actually something that

4    orders the disclosure of information.

5            This isn't a court of like.  This is a court of

6    law.  The defendants may like to have more information, but if

7    the law doesn't justify it, they don't get that information,

8    nor should they get that information.

9            The reason there's not as much -- not even close to

10   as much discretion to just order a bill of particulars is

11   because there's actually other law that specifically addresses

12   what is specifically requested in these particular bill of

13   particulars.  Rule 7(f) of the Federal Rules of Criminal

14   Procedure talks about bills of particular.  But Rule 7(c)

15   talks about what actually needs to be in an indictment.

16   Rule 7(c) says that an indictment only needs to be a plain,

17   concise, and definite written statement of the essential facts

18   constituting the offense charged and does not have to allege

19   the means by which the defendant committed the offense.

20           The essential facts of an offense are not a matter

21   of discretion.  It's not a matter of what a defendant would

22   like to know.  The essential facts are set by the law, set by

23   the statute, the opinions, the case law interpreting the

24   statute, and jury instructions.

25           THE COURT:  With respect to the law as to what you

1    have to say in an indictment here in Count 1, is it your

2    position that all that is required is essentially effectively

3    just listing the four elements as you've done in the

4    indictment memorandum and that would be sufficient?

5            MR. HALLER:  It is absolutely our position that's

6    true.  Now, there are laws that I don't agree with.  We could

7    cite a whole bunch of categorical approach sentencing laws

8    that I think are crazy.  But because I don't agree with them

9    doesn't mean that I get to disregard them or get my way.

10           I don't disagree or -- I fully understand why a

11   defendant would like the law to be different.  I mean, I may

12   not agree with them, but I fully understand why they would.

13   But that's not what this is about.  That's a disagreement with

14   what we need to prove and it's not a justification for a bill

15   of particulars.

16           An 846 conspiracy does not require us to identify

17   specifically who a defendant agreed with.  We have to prove a

18   defendant agreed to distribute in this instance a controlled

19   substance.  We don't have to do these things.  We don't have

20   to ever prove it.  In fact, we don't even have to ever know it

21   let alone state it before the trial even starts.

22           It would be an abuse of discretion to order the

23   particular bill of particulars that these defendants are

24   requesting also because -- and this might be the most specific

25   reason why -- there's a rule that addresses discovery in

1    federal criminal cases, it's Rule 16.  There is no general

2    right to pretrial discovery in a federal criminal case.  There

3    is a rule that governs it.  Rule 16 balances what needs to be

4    disclosed, on occasion what the form of that needs to be, and

5    what doesn't need to be disclosed pretrial.

6           That's really what -- when you actually look at

7    what's being requested here, they're requesting additional

8    discovery material under Rule 7(f) that is prohibited from

9    being disclosed or ordered to be disclosed under Rule 16.

10           THE COURT:  I mean, I would agree with that in

11    part.  I am not sure that all the requests -- I think a good

12    deal of them look to be discovery type requests which would

13    not be permitted.

14           I will tell you what -- maybe you can respond to

15    maybe Mr. Valenti's argument as to when I asked him what makes

16    this case different, he said the analogs really, I think

17    that's really the heart of it.  That has also given me pause

18    as to you have an indictment that lists controlled substances,

19    but covers a period in which some of those controlled

20    substances were not scheduled controlled substances, but it

21    appears the government would include those periods of time

22    under an analog theory.

23           So I think Mr. Valenti's argument is, well, how can

24    he prepare or other defendants here, how can they prepare for

25    this trial when they don't know I guess the time -- really

1    it's the time of the agreement as it relates to the timing of

2    when these substances became scheduled.  Can you respond to

3    that?

4            MR. HALLER:  I can, Your Honor.  I think to focus

5    on the -- particularly something Mr. Valenti said earlier this

6    morning, that he wants something in writing that confirms that

7    the prosecution is not relying on these synthetic cannabinoids

8    before they were scheduled.  I say -- and this is why I don't

9    think this is complex.  It only becomes complex if you want to

10   make it complex, and I think Mr. Patton has made it complex

11   for himself.  The indictment already states that in writing.

12   If we were going to rely on these substances as analogs, we

13   would have had to --

14           THE COURT:  Cite the analog statute.

15           MR. HALLER:  Cite the statute.  And we didn't.  I

16   already stated that not just in numerous conversations, but I

17   have stated that on the record.  If my recollection is clear,

18   I stated that on the record the last time we had a status

19   conference with all counsel.  And I repeat it here.  But I

20   shouldn't even have to repeat it really because it's stated in

21   the indictment by not being stated in the indictment.  We

22   didn't charge a continuing criminal enterprise in this case

23   either.  We didn't charge a lot of things.  We didn't charge

24   this as an analog case.

25           So if we would try to rely on the analog status,

1    not the controlled substance status of these substances, we

2    wouldn't be able to do that at trial.  A jury instruction

3    would easily address that.  I am sure that the defense will

4    request it.  We will probably draft the instruction that we

5    all agree on.  We couldn't do that.

6         So I know there's five synthetic cannabinoids that

7    are charged.  It is not a mystery when they were -- one was

8    scheduled in April of 2017, that's No. 7 listed there.

9         No. 8 was scheduled November 3rd, 2017.

10        No. 9 was scheduled February 5th, 2016.

11        No. 10 was scheduled July 10th, 2018.

12        No. 11 was scheduled July 10th, 2018, as well.

13        So could we have broadened the charge as an analog

14   conspiracy as well?  We could have.  We did not.  One of the

15   reasons we did not is to make it less complex.

16        I mean, if I were in the shoes of a defendant,

17   would I be more paranoid than I am?  Yes, I would be,

18   100 percent.  But that paranoia doesn't need to be indulged

19   into requiring the prosecution to provide something in writing

20   that is already provided in writing by not being in the

21   indictment, which is a writing on the subject.

22        I mean, quite frankly, what's being requested in

23   these bills of particulars is way beyond addressing just that

24   issue.  If there was a particular stipulation that those

25   defendants that are worried about being prosecuted for the

1    analog status of these substances before they were scheduled,

2    we could probably reach that stipulation and file it.  I could

3    sign it ten times.  Whatever would need to be done I would be

4    willing to do to get past this issue.  I don't blame a

5    defendant for being paranoid, but that's not a justification

6    for what's being requested here.

7              THE COURT:  I mean, I don't want to cut you off,

8    Mr. Haller, but maybe I will ask Mr. Valenti this.  You can

9    pick back up, Mr. Haller.

10             It seems to me a stipulation on that would cure the

11   harm, would it not?  I mean, I will tell you, coming into this

12   argument the concern I had was with the analog part of this.

13   Because if the government was charging Count 1 as an analog,

14   you would need to know -- you would definitely need to have

15   more specificity as to the date of the agreement relative to

16   when those substances became scheduled, and it may have

17   affected your trial preparation because then maybe you need an

18   expert, because an expert might talk about what are the

19   psychotropic effects of the analog, are they the equivalent of

20   the scheduled substance, it changes maybe your defenses in the

21   case.

22             But if the government as represented on the record

23   and would be willing to agree to a stipulation that the

24   conspiracy does not extend to periods in which any of the

25   substances were not scheduled, at least with respect to the

1    analog concern, isn't that enough?

2           MR. VALENTI:  The issue of analogs is just one

3    byproduct of the vague, non-particularized indictment.  That

4    is one problem and stipulations may be one way of dealing with

5    it.

6           In addition to that, let's say we resolve the

7    analog issue, we still have the representations that

8    Mr. Patton was not at all involved in cocaine or in heroin.

9    We need a separate stipulation for that because, again, he has

10   the right to be apprised of what he needs to prepare for and

11   the double jeopardy protection.  We can't go all the way

12   through this trial and then have cocaine brought in against

13   him or he gets indicted again when they had their chance to

14   indict him.  And he is under this indictment part of a cocaine

15   conspiracy even though the government has said he's not,

16   that's not part of what he did.

17          Now, if Mr. Patton gets that, a number of other

18   defendants need that.  And then you go down the path of, well,

19   now you are just doing a bill of particulars listing what

20   every person is involved with, which drugs.  We are not asking

21   for exact weights and dates and things like that.  But we do

22   need some ordering of who started this, who came in, what

23   drugs, who is attributable to which drugs, and can we accept

24   in some manner that that's going to be binding on all parties.

25          If you want to jump back to Mr. Haller --

1           THE COURT:  Yes, I appreciate that.  Mr. Haller, I
2  didn't mean to cut you off there, but I thought we could
3  address at least that stipulation with respect to the analogs
4  since you raised it.  So if you want to respond and then
5  continue in your argument.

6           MR. HALLER:  Yes, Your Honor.  I mentioned on the
7  double jeopardy protection, the broader of the indictment
8  actually provides greater double jeopardy protection for
9  Mr. Patton because if we were to supersede or somehow narrow
10  Mr. Patton to having not conspired to distribute specific
11  drugs, that actually would -- I mean, this is entirely
12  hypothetical and never likely to happen -- but it actually
13  would reduce his ability to claim double jeopardy if he was
14  subsequently indicted for distributing or conspiring to
15  distribute one of the drugs that we limited out of this
16  indictment.  I see it completely the opposite way here.

17           But what I also see opposite, which I guess isn't
18  surprising because we're not agreeing on things, but it is the
19  justification that the legal justification that's stated as I
20  think was referenced as a chorus of cases that support the
21  issuance of a bill of particulars in this case.  I actually
22  believe that sometimes the process of trying to support an
23  argument by referencing the law that's out there that's really
24  not out there kind of proves the contrary of your argument.  I
25  think that's what's happened here.

```
 1             I admire the attempt to try to find several, what I
 2   would consider as an advocate here, outlier kind of cases
 3   where bills of particulars were issued.  But I think the fact
 4   that we have to refer to outlier cases instead of the many
 5   more applicable cases showing when bills of particulars were
 6   denied shows that there isn't a chorus of cases.  The law
 7   doesn't support it.
 8             It's not because you would need a perfect storm as
 9   it's referenced for there to be supportive case law on the
10   issue of having bills of particulars issued.  That's no
11   different than any other type of motion, pretrial motion
12   that's denied and then there's a trial and a conviction and
13   then there is an appeal, which you could appeal -- defendants
14   could appeal in this case or any case when a bill of
15   particulars is denied.
16             The reason there isn't supporting cases is because
17   the law just isn't favorable for it.  And because it's a weak
18   argument, in my opinion, it's not an argument that's made to
19   the Third Circuit or these other circuits.  It is actually the
20   opposite.  Those cases where a bill of particulars was issued
21   over the prosecution's objection are the cases that you would
22   almost need a perfect storm.  In fact, you need an impossible
23   storm because we can appeal those interlocutorily.  And if we
24   win, we obviously at trial we don't appeal; and if we lose, we
25   can't appeal.  So it is the other way around.
```

1          But I guess my main focus on critiquing the defense

2     effort to support legally their motion is it seems that this

3     United States versus Rosa case that is cited in the reply

4     brief of Mr. Patton is really what a lot of effort is invested

5     into.  To elevate the Rosa case, a 1989 opinion from the Third

6     Circuit, as the case that supports these motions, Mr. Patton

7     goes so far as criticizing the prosecution for not recognizing

8     that, quote, the analytical framework is what is meaningful,

9     end quote, in Rosa.

10          I am not attributing improper motives at all to the

11     defense for the manner in which Rosa is cited and discussed,

12     but the manner that Rosa is cited and relied upon here is

13     misleading and it's ultimately not persuasive at all.

14          The defense reference to Rosa as just a, quote,

15     drug conspiracy case, end quote, is just not true.  It's hard

16     to miss that that's not true.  It's not true in a way that

17     completely changes the, quote, analytical framework, end

18     quote, of Rosa.

19          Rosa was not just a drug conspiracy case.  Rosa was

20     a case that did charge a drug conspiracy, but it also charged

21     a continuing criminal enterprise under Title 21 United States

22     Code Section 848.  The bill of particulars issue in Rosa

23     involved the continuing criminal enterprise charge.  A

24     continuing criminal enterprise charge has a supervisory role

25     as an element.  It's completely different in that manner than

1    an 846 conspiracy.

2          That's why the issue came up in Rosa.  It's not

3    because of the drug conspiracy charge in there.  I think that

4    it is less than ideal that this was referred to as a drug

5    conspiracy case in the reply brief because as it relates to

6    the bill of particulars issue, we're talking about it was a

7    continuing criminal enterprise case.  The supervisory role was

8    an element in that case and it's not an element in this one.

9          THE COURT:  Let me ask you, Mr. Haller, to address

10   two other things if you can.  One, Mr. Paulick's argument just

11   on the practical effects here and this being a middle ground

12   and there are some practical benefits to a bill of particulars

13   in terms of assisting defense counsel in preparation for

14   trial.  Then also Mr. Markovitz's point where he said this is

15   not -- this case is not like your garden variety drug

16   conspiracy case.  So if you can address both those points.

17         MR. HALLER:  I am happy to, Your Honor.  In

18   addressing Mr. Paulick's point, which these motions have been

19   marketed as a way to reduce the number of pretrial motions and

20   reduce possibly the number of trial defendants.  I completely

21   disagree.  I don't see that granting the bill of particulars

22   in this case reduces pretrial motions by one motion.  I don't

23   think granting these motions in this case will reduce trial

24   defendants by one trial defendant.  I actually think, if

25   anything, granting the motions in this case will increase the

1   number of trial defendants.

2          Because I think what this is based on is -- and

3   some of these defendants have been described as sophisticated

4   defendants.  And some of these defendants, I think the ones

5   that are most staunchly behind this motion, want the law to be

6   what they want the law to be and they want the facts to be

7   what they want the facts to be.

8          There's been some degree -- I am not saying by

9   defense counsel at all here -- but some of these defendants in

10  attempting to manipulate this process, I don't think that -- I

11  think granting this -- the whole reason they want this granted

12  is to lock the prosecution in to gain an advantage at trial.

13  I cannot see how indulging that motive is going to reduce the

14  trial willingness of any of these defendants.

15         I mean, at most it's purely a matter of speculation

16  how this could play out.  The most important point is even it

17  were true, even if this idea that there's -- it should be

18  granted for pragmatic reasons about which we disagree, you

19  can't not follow the law in order to reduce the number of

20  pretrial motions or trial defendants.

21         So I don't think that ultimately the read on this

22  is accurate --

23         THE COURT:  I am not sure I understand Mr. Paulick

24  is arguing that that should drive it.  I think it was more of

25  there are just a lot of documents, a lot of data, is this not

1    going to assist in limiting really what they need -- what

2    defense counsel and the defendants really need to review to be

3    prepared for trial as opposed to reducing the possibility of

4    trial or pretrial motions?

5              MR. HALLER:  Like I said, I don't think that --

6    ultimately I don't think that there is a lack of understanding

7    about what each one of these defendants are charged with or

8    what needs to be prepared for trial.

9              I think that what is wanted here is the lock-in.

10   That's what is wanted here.  That's really why a bill of

11   particulars is such a -- it's not just an easy discretionary

12   act that we shouldn't disagree with.

13             THE COURT:  Okay.

14             MR. HALLER:  I am trying to recall Mr. Markovitz's

15   point.

16             THE COURT:  Mr. Markovitz made a couple of points,

17   but one of the points was that this is a very different type

18   of drug conspiracy case that would warrant a bill of

19   particulars.

20             MR. HALLER:  That's right, I apologize.  I think

21   Mr. Markovitz makes a point there that it's different, and I

22   agree, but I actually agree only to the extent that there's

23   more detail in this conspiracy charge than there is in other

24   ones.  It's not that it's less detailed.  There is more

25   detail.  We worked hard on this case.  We were in some

1    respects very successful.  We were able to identify many of

2    the co-conspirators.  We were able to list them in the

3    indictment.

4        We were able to identify many of the drugs that

5    they were conspiring to distribute.  We were able to list them

6    in the indictment.

7        This is not even close to the first multi,

8    multi-defendant indictment we've had in this district.  I

9    mean, 48 defendants is a lot, and there's 46 in Count 1 that

10   we are talking about here.  We've had 30-some, 40-some

11   defendant indictments before.  We've had -- conspiracy

12   indictments.  And we've had these multidrug conspiracy

13   indictments.  There's nothing -- that doesn't make it unique.

14       I don't see this -- and the fact that Noah

15   Landfried had customers, some of whom are incarcerated and

16   some of whom are not, doesn't make it unique either.

17   Sometimes we have suppliers of drugs who have customers who

18   are in Pennsylvania and some have customers in other states as

19   well.  The fact that -- there are certain characteristics of

20   this case, but nothing that makes it unique or vague.

21       As we tried to make the point in our response, if

22   there's anything that sticks out, it's that there is more

23   detail in this indictment in Count 1 than there is in other

24   conspiracy indictments that we've charged, not less.

25       And not that this -- I state this just to kind of

1    give context to this issue in this district.  We could have
2    been doing something wrong in this district for the last 20
3    years.  That doesn't mean this Court should continue to go
4    along with it.  But it is important to point out that granting
5    a bill of particulars in this case is a statement that the
6    tens of indictments like this that we've charged exactly this
7    way shouldn't be charged that way anymore.  And if they are,
8    they need bills of particulars too because there's nothing
9    unique except for maybe more detail being in Count 1 than
10   less.
11            THE COURT:  I wonder like in a civil context where
12   you plead yourself out of court by putting more detail,
13   providing more detail and providing more documents it raises
14   more complaints -- I don't want to say "complaints," but
15   arguments from the other side that a bill of particulars is
16   needed versus a general indictment and providing the bare
17   minimum.  That's just an observation.
18            MR. HALLER:  The way that the amount of discovery
19   has complicated this process does make me wonder if we should
20   just provide less discovery.  What you would end up with I
21   think is for those defendants who file pretrial motions or
22   have a hearing or those defendants who go to trial, you would
23   end up with instead of the large amount of discovery on the
24   front end, you would have a large amount of Jencks material on
25   the back end.  So you would end up with trial scheduled or

1    hearing scheduled next week and now you have to review all of

2    these Jencks documents which really were not discovery as it

3    related to this particular defendant, but they are writings on

4    the topic that this witness/case agent authored.

5         In the end I still think that over-providing

6    discovery and working with the defense on reviewing it is just

7    the way it should be.  But I do think sometimes things become

8    more complicated and you end up with hearings like this

9    because of providing --

10         THE COURT:  Too much.

11         MR. HALLER:  Yes, too much information.

12         THE COURT:  Okay.  No, I think I understand your

13    argument, Mr. Haller.  I will give Mr. Valenti a chance to

14    reply quickly.

15         MR. VALENTI:  Sure.  There's a number of points

16    just picking up where we just were.  There should not be a

17    decision to sacrifice one constitutional right for another.

18    If defendants have a right to Brady and Jencks material and

19    they also have a right to prepare for trial and be protected

20    against double jeopardy, it is not a trade-off.  We laud the

21    government for turning over Brady and Jencks material earlier

22    than absolutely necessary because that does avoid a lot of

23    these issues that they had before with withholding exculpatory

24    evidence and even going to helping with trial prep.

25         But just because that process exists, that does not

1    mean that in order to get Brady and Jencks material at an

2    earlier appropriate time we have to forgo using procedural

3    options that will help further prepare for trial, further

4    provide effective assistance of counsel, and further enhance

5    double jeopardy rights.  Constitutional rights just don't get

6    bartered like that.

7         Going to the top, what the government started with

8    very early on was saying that this Court has limited

9    discretion, this is something that is a road that you might

10   not want to go down.

11        Rosa, again, completely discounts that.  It goes in

12   painstaking detail through the history of Rule 7(f) and the

13   bill of particulars.  Since 1966, it has been entirely within

14   the trial court's discretion for any reason.  Before 1966, the

15   defendants did have to show, quote-unquote, good cause to get

16   a bill of particulars.  Good cause is not that high of a

17   standard, but it was a standard.

18        Since 1966, that's been taken out of the rule.  So

19   if you get rid of the good cause standard, it's like if you

20   have got some type of reason, if it makes sense, if it helps,

21   it's not good cause, it is a standard far below that truly

22   within the discretion of the court.

23        Going to another point that the government made.

24   They talk about the effect of the bill of particulars

25   limiting, you know, locking in the government's case, but you

1    need the justification.  To be clear, we do not need a good

2    cause justification and haven't needed that since 1966.

3            Secondly, the justification is to protect

4    constitutional rights, to ensure double jeopardy protection.

5    As Mr. Markovitz said, to protect the defendant's right.  Not

6    the defense counsel's rights, not the rights of everyone else.

7            Yes, there are impacts on the government, there's

8    impacts on the Court, there's efficiency arguments.  But at

9    the end of the day the most paramount rights that exist in

10    most of the Bill of Rights are defendant's rights.  That's

11    what justifies the use of a bill of particulars.

12            The justification is protecting constitutional

13    rights for due process, notice, fair opportunity, effective

14    assistance of counsel, protection against being placed in

15    jeopardy twice for the same offense, to really create that

16    res judicata double jeopardy protection.

17            One of the other issues is the statement that the

18    indictment can simply be listing the elements in the statute.

19    There's a large body of case law that says you cannot just

20    parrot the elements of a statute.  That is not effective.  We

21    briefed some of that, we can submit supplemental briefing if

22    we get to that, although that is more on the motion to dismiss

23    phase.  But parroting the elements of the statute is one of

24    the key problems that leads to a lot of cases being dismissed.

25            Jumping down to the idea that this is something

 1   being done to get an unfair advantage or to give defendants an

 2   advantage, it's not.  The defendants are seeking fairness, not

 3   an advantage.  They're seeking to be put in a position where

 4   their rights can be protected.  This is not gaining an

 5   advantage or an unfair advantage.  It's a process that exists

 6   to respect these rights.

 7          Going back to Rosa, again, in the painstaking

 8   detail in which they walked through the history of the bill of

 9   particulars, in 1966 they wanted to encourage more liberal use

10   of bills of particular.  They wanted to give unfettered

11   discretion to judges at the trial level.  The Third Circuit

12   has reinforced this in a number of cases to work through these

13   types of issues, and nowhere is it more important than in

14   conspiracy cases.

15          To say that Rosa is a continuing criminal

16   enterprise case primarily and not a conspiracy case, both

17   counts are there, it is a distinction without a difference.

18   It gets back to the guts of Rosa talks about the standard

19   entirely discretionary, not good cause.  It talks about the

20   rights to be protected, fairness, due process, trial prep,

21   Sixth Amendment, effective assistance of counsel, double

22   jeopardy.

23          And it talks about the general concept that if you

24   get charged with a crime saying you agree to do bad stuff with

25   other people and you help them do it, you should know who

1    those other people are particularly.  It's not enough to say

2    you and any one or more of these other 45 people did stuff.

3    It's got to be more specific than that.  It's not going to

4    respect the rights of fair notice, sufficient preparation,

5    double jeopardy to have something that broad.

6            Frankly, the government's arguments contradict

7    themselves.  They can't have it both ways.  The indictment

8    can't be so broad that it gives Mr. Patton all this extra

9    double jeopardy protection, but it also cannot be so narrow

10   that he is perfectly suited for trial preparation and he has

11   got a nice focused document to jump through.  Either we have

12   to go through all the trouble of preparing for a cocaine case,

13   because the indictment is so broad that it would prevent

14   double jeopardy from attaching in a future cocaine case, so

15   this is a cocaine case, or we have to go to the other side

16   where, okay, we can leave cocaine off the table, but then,

17   well, that's not that broad of an indictment.

18           Again, just reiterating Mr. Markovitz's points,

19   this goes to the defendant's rights.  This goes to their

20   ability to prepare.  This goes to their constitutional rights.

21   Those are the justifications that require these procedures.

22   And it is our job as advocates for these individuals to bring

23   these arguments forward.  It is not a manipulation of the

24   system to ask for the process which is due.

25           THE COURT:  All right.  Thank you.  I think, unless

1    the government has anything else to add, I think --

2            MR. HALLER:  I do, Your Honor, but it will be

3    brief.

4            THE COURT:  I will give you the final word here.

5            MR. HALLER:  Your Honor, Rule 7(f) is not the super

6    rule.  It doesn't trump every other rule that specifically

7    address the subject.

8            So the idea that, recognizing the Court has

9    discretion to issue of a bill of particulars, doesn't mean

10   that the Court has discretion to not follow Rule 16.  As there

11   are with any laws, there are some that address subjects more

12   specifically than others.  This indictment does not just cite

13   the statute.  There are some indictments that do, and if you

14   look at some of the outlier cases, that's where there's been

15   bills of particulars.  This indictment actually lists 46

16   defendants and the different controlled substances.  So it

17   does not just parrot.  It simply doesn't.  It does not just

18   parrot the statute.

19           The statement I think that was made not just now,

20   but in the reply brief, that there was a -- issuing a bill of

21   particulars for this kind of information would not endanger

22   witnesses I think is conclusory, and depending on what kind of

23   information is being sought here is wrong.

24           I don't know how -- defense counsel would have to

25   understand this -- how we would be able to identify some of

1    the specific information without really telegraphing who our

2    cooperating witnesses are.  I don't think that defense counsel

3    is in a position to make the conclusory statement that was

4    made that issuing a bill of particulars, specifically what's

5    being requested here, would not endanger witnesses.  It likely

6    would.

7            Two other points and I'm done.  To say that it is a

8    distinction without a difference in Rosa that it was a

9    continuing criminal enterprise versus a drug conspiracy case

10   is just completely wrong.  The only reason that that issue

11   came up in a way that prompted the defense to cite it is

12   because there's an element for a continuing criminal

13   enterprise where the prosecution has to prove the supervisory

14   role of the defendant.  That's what that was about.  Just read

15   the opinion and it becomes apparent.

16           Finally, this is an issue of -- the defendants that

17   are most in favor of this bill of particulars are those that

18   understand what they're charged with.  They just don't agree

19   that they did that or don't want to accept responsibility for

20   that, which is entirely legitimate.  But that's what a trial

21   is for.  It's not what pretrial motion litigation is for.

22           Thank you, Your Honor.

23           THE COURT:  Okay, thank you.  Thank you to

24   everybody for their very good arguments on that.

25           I am not going to rule on this today, but you will

1    get a ruling on the motions for bill of particulars shortly.

2            I would like to talk generally about the status of

3    the case.  I appreciate all defense counsel being present here

4    today.

5            At the last conference we had, which was in

6    October, I set a final pretrial motions deadline of March 10

7    and also a status conference for March 3rd, a week before

8    the pretrial deadline.

9            With respect to pretrial motions, even though

10   that's the deadline, if counsel believes that there are

11   certain pretrial motions that ought to be filed and decided

12   ahead of time, ahead of the deadline, such as this motion for

13   a bill of particulars, including any motions that might --

14   motions on legal issues that currently might be an impediment

15   to any plea discussions, they should be open to -- you can

16   file ahead of the deadline.  I wanted to make that clear for

17   everybody.

18           At the March 3rd status conference, what I would

19   expect to discuss would be any defendants who would be filing

20   pretrial motions, to hear them in terms of what motions they

21   intend to file, so it would be a preview.  But the March 3rd

22   deadline I am also setting as a deadline by which to schedule

23   any pleas.  So by that status conference if you haven't

24   alerted the Court already, I expect anyone who is intending to

25   plea to provide the Court with notice at that status

1  conference.

2          As you all know, under the sentencing guidelines

3  for acceptance of responsibility there's the extra point for

4  the early acceptance of responsibility.  So by alerting me and

5  scheduling a plea hearing before March 3rd, your client

6  would be guaranteed that extra point.  So please keep that

7  date in mind.

8          Is there anything that any counsel here wants to or

9  needs to address with the Court going forward with respect to

10  scheduling or any other matters?  Anything any counsel needs

11  to raise today?

12          All right.  Yes, sir.

13          MR. BURNEY:  Your Honor, I don't know if you wanted

14  to address today the motion that I filed regarding David

15  Curran as far as requests for hard copies of discovery.

16          THE COURT:  Yes.  Remind me what your name is

17  again, sir.

18          MR. BURNEY:  Alonzo Burney representing defendant

19  David Curran.

20          THE COURT:  We can address it today.  I think I

21  ordered the government to respond to that, and I can't

22  remember if -- did you file a response, Mr. Haller?

23          MR. HALLER:  We did yesterday afternoon,

24  Your Honor.

25          THE COURT:  I didn't have a chance to review it

1    yet.  So I don't know if it's necessary to address it here on

2    the record.  I have your written responses.  I can just decide

3    it and issue an order in due time.

4                 MR. BURNEY:  Okay.

5                 THE COURT:  Thank you.  Anybody else have anything

6    to raise today with the Court?

7                 Again, March 3rd status conference, I am going to

8    issue an order today setting the time for that at 2 p.m. on

9    March 3rd.  Then March 10th is the pretrial motion

10   deadline.  As I said at the last status conference, that

11   deadline will not be moved.

12                Then if there are no pretrial motions filed by

13   March 10th, we will set a trial date.  And I at that point

14   would likely ask the government and defense to submit a trial

15   plan of some kind to see how we could try this case, whether

16   it's in phases or piecemeal or what have you.

17                MR. HALLER:  Thank you, Your Honor.

18                THE COURT:  All right.  Thank you, everybody.

19                While you are milling out, just to make the record

20   clear, I am going to order a copy of this transcript with the

21   costs to be split between the government and the CJA lawyers.

22   Thank you.

23                (Record closed.)
                         C E R T I F I C A T E
24           I, Richard T. Ford, certify that the foregoing
     is a correct transcript from the record of proceedings in the
25   above-titled matter.
     S/Richard T. Ford  _____