IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
     )
v.     )     Criminal No. 19-8
     )
ROSS LANDFRIED     )
DAVID CURRAN     )

## OMNIBUS RESPONSE TO MOTIONS IN LIMINE

### I.   INTRODUCTION

Defendants Ross Landfried and David Curran filed motions in limine seeking to exclude evidence from their upcoming trial.   Mr. Curran filed Documents 3431, 3435, 3437, and 3442. Mr. Landfried filed Documents 3433, 3438, and 3441.   Mr. Landfried also filed Document 3445 seeking to compel the prosecution to produce and provide a bill of particulars regarding Count Two of the Superseding Indictment.

A "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017); *United States v. Guerrier*, 521 F.Supp.3d 527, 531 (M.D.Pa. 2021).   "A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation, but, rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Landfried*, 2020WL758816, at *2 (W.D.Pa. 2020) (citing *United States v. Butler*, 2019WL2409052, at *3 (M.D.Pa. 2019)).   The pending motions should be denied because the challenged evidence is admissible and a bill of particulars is not warranted.

## II.   MOTIONS TO EXCLUDE EXHIBITS 10 & 29 (Docs. 3431 & 3438)

Exhibits 10 and 29 are two envelopes, as well as their contents, that were seized and stored by BOP officers at USP-Lee in Virginia (Ex. 10) and FCI-McDowell in West Virginia (Ex. 29) in 2017 and 2018.   Exhibits 10 and 29 were transferred into DEA custody in 2018.   In Document 3431, Mr. Curran has moved to exclude Exhibit 29 on authenticity/chain of custody grounds.   In Document 3438, Mr. Landfried has moved to exclude Exhibit 10 on authenticity/chain of custody and relevance grounds.   It should be noted that, because Exhibits 10 and 29 are saturated with Schedule I synthetic cannabinoid controlled substances, the actual trial exhibits will be photographs of the envelopes and their contents.

### A.   Authenticity/Chain of Custody

Trial evidence is authenticated at trial.   The prosecution has no obligation to authenticate trial evidence via pretrial briefing or at a pretrial hearing based on a defendant's claimed lack of knowledge regarding how the evidence will be authenticated at trial.   The prosecution will authenticate and establish the chains of custody for Exhibit 10 and Exhibit 29 at trial.

Authentication objections, like other trial objections, are assessed according to the applicable Federal Rules of Evidence, including Rules 104(b) and 901(a).   Rule 104(b) states that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."   Rule 901(a) states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."   There is no requirement, under Rules 104(b) or 901(a) or any other rule, that the proponent authenticate trial evidence before the evidence is presented at trial.

2

The pending motions to exclude Exhibits 10 and 29 are challenges to the respective chains of custody for those exhibits.    Establishing the chain of custody for evidence is just one of several ways evidence can be authenticated under F.R.E. 901(a). *United States v. Rawlins*, 606 F.3d 73, 82 (3d Cir. 2010).    Another way evidence can be authenticated is through its distinctive characteristics. F.R.E. 901(b)(4).

"To establish a chain of custody sufficient to make evidence admissible, the proponent need only prove a rational basis from which to conclude that the evidence is what the party claims it to be." *Rawlins*, 606 F.3d at 82 (cleaned up). "This burden is not a heavy one." *Id*.   Moreover, "[a]bsent actual proof of tampering, a trial court may presume regularity in public officials' handling of contraband." *Id*. at 85 (cleaned up).

The pending motions appear to assume that gaps in a chain of custody should generally result in the exclusion of evidence.   Federal courts have "long rejected the proposition that evidence may only be admitted if a complete and exclusive chain of custody is established. . . ." *Id*. at 82-83 (cleaned up).   Gaps in a chain of custody generally go "to the weight of the evidence, not its admissibility." *Id*.

The Supreme Court, in fact, has explicitly rejected the premise that chain of custody gaps should generally result in the exclusion of evidence.   In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009), the Court clearly stated that "we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." After recognizing that the prosecution has an obligation to establish chain of custody, the Court explained that establishing chain of custody "does not mean that everyone who laid hands on the evidence must be called." *Id*.   The Court further explained that "[i]t is up to the prosecution to

decide what steps in the chain of custody are so crucial as to require evidence" and "gaps in the chain of custody normally go to the weight of the evidence rather than its admissibility." *Id*.

Several Third Circuit opinions demonstrate that the defendants' chain of custody objections should be overruled when Exhibits 10 and 29, and their corresponding lab reports, are offered at trial. For example, in *United States v. Rawlins*, 606 F.3d 73, 82 (3d Cir. 2010), the defendant sought to exclude evidence of cocaine seized at airports in the United States and the Virgin Islands that was eventually tested at a DEA lab. The Third Circuit described the defendant's chain of custody argument and the gaps in the chain in the following manner:

> [The defendant] argues that the chain of custody of the drugs seized each day was broken because there was no evidence connecting the drugs that were placed in evidence lockers on each occasion to the drugs that were received and tested by DEA chemists. We agree. With respect to the cocaine seized on November 8, DEA chemist Craig testified that she "took the evidence out from the main vault," but Craig was stationed in New York City while Agent Benwell testified that he placed the drugs in the Newark evidence room. It was never established whether Craig retrieved the cocaine herself from Newark, or whether those drugs were at some point transferred from Newark to what Craig called the "main vault" in New York City. Concerning the cocaine seized on February 21, there was no explanation of how drugs placed in the evidence locker on St. Thomas ended up in Pinero's lab in Virginia. Finally, as to the cocaine seized on March 10, there was only Montreuil's testimony that she "obtained" the evidence seized on that date, "opened it," and then tested it. Again, there was no explanation of how a DEA chemist in New York City acquired evidence that was initially stored in Newark. Montreuil testified that the drugs she tested were the same drugs seized on March 10, 2004, but she lacked the personal knowledge necessary to make that assertion. The most she could say was that she tested a substance; the substance was cocaine; and the sample introduced at trial was the same one that she tested. The same is true of Craig's testimony that she tested the "samples seized in connection with Flight 1902 on or about November 8, 2003," and Pinero's claim that he tested "bricks that were seized from St. Thomas on or about February 21, 2004."

The Third Circuit upheld the admission of the cocaine evidence in *Rawlins* despite the gaps in the chain of custody that failed to demonstrate how the cocaine got from the airports to the DEA labs on multiple occasions. *Id*. at 84-85. The court did so because there was a rational basis for

the jury to conclude that the evidence was what the prosecution said it was despite the gaps in the chain of custody. *Id*.   The court also referenced the presumption of "regularity in public officials' handling of contraband." *Id.* at 85.

The Third Circuit in *United States v. Benoit*, 730 F.3d 280, 289 (3d Cir. 2013), similarly rejected a defendant's attempt to exclude cocaine evidence on chain of custody grounds.   The cocaine in *Benoit* was seized on a boat and taken to a DEA lab by a DEA agent. *Id*.   There was an apparent gap between the DEA agent who took the cocaine to the lab and testified at trial and the DEA chemist who tested the cocaine and testified at trial. *Id*.   The court nevertheless upheld the admission of the cocaine evidence even though a DEA employee, who had custody of the cocaine at the lab before the chemist, did not testify. *Id*.   Once again, the court noted that there was a rational basis for concluding that the evidence was what the prosecution said it was. *Id*.

In *United States v. Marrero*, 643 F. App'x 233, 239–40 (3d Cir. 2016), a Third Circuit panel was not persuaded by a defense chain of custody argument that cocaine seized at an airport in Atlanta, then stored at the DEA Miami Office for three months, and then FedEx'ed to a DEA lab for testing should have been excluded at trial.   According to the defense in *Marrero*, the chain of custody issue created by the three-month gap while the cocaine was at the DEA Miami Office was exacerbated by unexplained markings on a custody log sheet. *Id*.   In affirming the admission of the cocaine evidence, the court in *Marrero* found "the markings on the log sheet to be the type of inconsistency that goes to the weight of the evidence, not its admissibility." *Id*.   The court concluded that there were no "serious gaps in this case" after "[w]itness testimony established the process by which the evidence was sent to the DEA for testing and was actually tested." *Id*.

In this case, the chains of custody for Exhibits 10 and 29 will be sufficiently established by witness testimony explaining how the challenged evidence was seized and stored at USP-Lee and

FCI-McDowell and then subsequently transferred into DEA custody.   The challenged evidence was obtained, stored, and transferred according to the routine practices of the organizations involved. *See* F.R.E. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.").

It should be noted that, in addition to authenticating the challenged evidence via chain of custody testimony, the authenticity of the challenged evidence will also be supported by its distinctive characteristics.   The challenged evidence is K2 paper containing various words, names, addresses, and other identifying characteristics.   These distinctive characteristics will provide a rational basis to conclude at trial that the challenged evidence is what the prosecution will say it is.

## B.   Relevance

Mr. Landfried also seeks to exclude Exhibit 10 because co-defendant Sterling Marshall, who was an inmate with Mr. Landfried at USP-Lee, was the addressee on the envelope instead of Mr. Landfried himself.   Mr. Landfried argues that, because he was not the addressee, Exhibit 10 is irrelevant under F.R.E. 401 and excludable under F.R.E. 403.   Mr. Landfried's argument, however, fails to account for the close relationship he had with Marshall as will be demonstrated by trial evidence.

F.R.E. 401 "does not raise a high standard." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009).   Evidence is relevant under Rule 401 if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E. 401.   A consequential fact does not have to be an element of a

charged offense. *United States v. Elwell*, 515 F. App'x 155, 159 (3d Cir. 2013) ("A fact does not have to be an element of the offense to be 'consequential.' Rather, evidence that aids the jury in understanding the background and the nature of the underlying offense also has probative value.").

F.R.E. 403 "creates a presumption of admissibility." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).   Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added).   Exclusion of evidence under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011). "Rule 403 requires a court to look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (cleaned up).

"[W]hen evidence is highly probative," like Exhibits 10 and 29, "even a large risk of unfair prejudice may be tolerable" under Rule 403. *Cross*, 308 F.3d at 323.   Moreover, Rule 403 addresses only "unfair prejudice" which is much more than evidence "suggesting guilt" or evidence that is "undesirable from the defendant's perspective." *Id*. at 324 n.23.   "'Unfair prejudice' means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*

Trial evidence will demonstrate that Mr. Landfried's relationship with Sterling Marshall went beyond the fact that they were both inmates at USP-Lee at the time Exhibit 10 was seized at USP-Lee in 2017.   The trial evidence will demonstrate, among other things, that Marshall was actively assisting Mr. Landfried with the drug trafficking scheme at USP-Lee in 2017.   Exhibit

10 will, therefore, have a tendency to make a material fact more or less probable than it would be without the evidence.   The pending motions to exclude Exhibits 10 and 29 should be denied.

### III.   MOTIONS TO EXCLUDE EXHIBITS 7 & 13 (Docs. 3435 & 3441)

Exhibits 7 and 13 are emails that Mr. Curran (Ex. 7) and Mr. Landfried (Ex. 13) received and sent on April 12-13, 2018.   The emails were received and sent to/from their BOP email accounts.   The subject of the incoming emails is the amendment of the United States Sentencing Guidelines by the United States Sentencing Commission, specifically referencing amendments regarding "synthetic cannabinoids" a/k/a "K2."   The outgoing emails were sent shortly before and shortly after the incoming emails were received.

In Documents 3435 and 3441, the defendants moved to exclude Exhibits 7 and 13 on relevance grounds.   According to the defense motions, the emails are irrelevant unless there is direct evidence that the defendants reviewed the emails.   Mr. Landfried also argues that the emails constitute inadmissible hearsay and their admission would violate the Confrontation Clause of the Constitution.

As noted above, F.R.E. 401 sets the standard for assessing the relevance of evidence.   Rule 401 "does not raise a high standard." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009). Evidence is relevant under Rule 401 if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E. 401.

Exhibits 7 and 13 have a tendency to make a material fact more or less probable.   The defendants' knowledge that they were conspiring to distribute a controlled substance will be a central issue at trial as the pending motions reflect.   The fact that the defendants received emails from legal professionals notifying them of the amendment of the Sentencing Guidelines by the

Sentencing Commission to better address "synthetic cannabinoids," a/k/a "K2," has a tendency to make a material fact – i.e., knowledge of the controlled substance status of synthetic cannabinoids/K2 – more probable.

The pending motions generally concede the point that Exhibits 7 and 13 are relevant, but condition this concession on direct evidence that the defendants reviewed the emails. Such direct evidence, however, is not required. Circumstantial evidence can serve as a complete and satisfactory substitute for direct evidence.

Requiring direct evidence that an email was reviewed before a jury could consider it to be relevant would create an unwarranted exception to F.R.E. 104(b). Rule 104(b) authorizes the admission of conditionally relevant evidence as long as proof of the conditional fact is presented that is "sufficient to support a finding that the fact does exist." Such proof can be circumstantial evidence. The factual finding is ultimately to be made by the jury at trial. The Advisory Committee Notes for F.R.E. 104(b) highlight this point:

> If preliminary questions of conditional relevancy were determined solely by the judge, as provided in subdivision (a), the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries. Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted.

In this case, circumstantial evidence will be sufficient to support a finding by the jury that the defendants reviewed the emails. As the outgoing emails demonstrate, the defendants sent emails shortly before and shortly after the incoming emails were received. Moreover, they did so using their prison accounts that do not function like non-prison accounts.

The prison accounts could not be spammed by senders who were not already listed as contacts. The defendants had to register the senders' email addresses in advance to receive the

emails.   The fact that the emails were sent by legal professionals who the defendants invited emails from by registering their email addresses makes it substantially more likely that they reviewed the emails.   In addition, the fact that the prison accounts could only receive emails from approved contacts who were registered in advance substantially reduced the overall amount of incoming emails.

The evidence will, therefore, be sufficient to support a reasonable jury finding that the defendants reviewed the challenged emails in their prison accounts that function more like work email accounts than personal email accounts. *See, e.g., United States v. West,* 2015WL12938934, at *7 (N.D.Fla. 2015) (unpublished) ("A reasonable jury may infer that one sees and reads his work emails.").

Even if the defendants did not review the emails, the emails would still be relevant.   The fact that they chose not to review the emails would make their deliberate ignorance of the controlled substance status of synthetic cannabinoids/K2 more probable.   The jury will be instructed that deliberate ignorance is the equivalent of knowledge when a defendant "deliberately closed his eyes to what would otherwise have been obvious to him." Third Circuit Model Jury Instruction 5.06.   If the defendants, while involved in the distribution of synthetic cannabinoids/K2, chose not to review invited emails titled as "Breaking News" and "Alerts" from legal professionals, then they chose to be deliberately ignorant.   The emails, even if not reviewed, are relevant evidence of those choices. *See, e.g., West,* 2015WL12938934, at *7 (N.D.Fla. 2015) ("If [the defendant] did not read any of the emails Lynda Saye sent him with important information about the TLGP, the jury could infer that he consciously chose not to read the information, because it is reasonable to infer that one sees and reads his work emails. If he did not read Powell's email, then the jury could infer this was a conscious choice to avoid its contents for the same reason.").

Finally, the emails should not be excluded on Confrontation Clause or hearsay grounds. The Confrontation Clause does not apply to non-testimonial statements. *Ohio v. Clark*, 576 U.S. 237, 245 (2015). The Supreme Court has explained that testimonial statements have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Id.* at 244. No credible argument can be made that any part of the emails had such a primary purpose or even such a secondary purpose.

The emails are not hearsay because they will not be offered for the truth of the matter asserted. That is, they will not be offered to prove that the Sentencing Commission actually amended the Sentencing Guidelines for synthetic cannabinoids/K2 in the manner stated in the emails. The emails will, instead, be offered for the fact that the statements about amending the Sentencing Guidelines for synthetic cannabinoids/K2 were made and sent to the defendants regardless of whether the statements were accurate about how the Sentencing Guidelines were actually amended. F.R.E. 801, Advisory Committee Notes for Sub-division (c) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Saada*, 212 F.3d 210, 218 n.8 (3d Cir. 2000).

As explained above, the fact that the Sentencing Guidelines for "synthetic cannabinoids," a/k/a "K2," could be amended, regardless of how they were amended, makes the material fact of knowledge/deliberate ignorance of controlled substance status more probable. The emails are, therefore, relevant. Furthermore, the emails are admissible non-hearsay because their relevance does not depend on whether the Sentencing Guidelines were actually amended in the manner stated in the emails. To the extent there is extraneous content in the emails constituting Exhibits 7 and 13, it will be redacted prior to the exhibits being offered at trial.

### IV.  MOTIONS TO EXCLUDE RULE 404(b) EVIDENCE (Docs. 3433 & 3437)

The defendants were previously notified in writing of the prosecution's intention to present evidence at trial "(1) of Ross Landfried's prior drug trafficking federal conviction and incarceration, and (2) of David Curran's prior drug trafficking federal conviction and incarceration."   Mr. Curran was also previously notified in writing of the prosecution's intention to present evidence that "following his indictment in this case, [he] continued to engage in drug trafficking, particularly K2 paper trafficking, while he was pending trial and housed at local detention facilities.   For example, please see the attached report on such drug trafficking at the Cambria County Jail.   The trial evidence will include testimony about such behavior at the Cambria County Jail as well as other facilities, including the Allegheny County Jail."

The following is an excerpt from the Cambria County Jail report of Officer Jerrad Baker that is referenced in the preceding paragraph:

On 1-15-22 @ approx. 1210-1225, this officer was sitting at the desk when Inmate Curran D walked up to the desk and started to talk about random happenings at this Facility. He then asked if I was going to accept the bid for second shift, I replied No. Shortly after this discussion, I/M Curran asked quietly if I would like to make $3200.00 for a easy job. He stated that All I would have to do is call a cell number, tell the Female that Dave told me to call you. Once this was done All I would have to do was pick a meeting spot and pick up a envelope filled with 1-7 blank pieces of paper. Mr. Curran then stated that all the work was lined up but he wouldn't be able to call her b/c of the phones being monitored. I did act intrested

due to ability to recieve more information. Mr. Curran then instructed this officer on how to smuggle the items into Cambria County Prison. He said to fold the papers into a small square and insert them under your genitals, followed by either long johns, or another pair of boxer briefs. This is used to prevent the papers from falling onto the ground. I/M Curran boasted about using this techngue at Federal Prisons and using it here at C.C.P. Shortly After this conversation the phone rang causing Mr. Curran to exit the area of the desk

The defendants were informed that evidence of their prior convictions would be offered "for at least the following purposes:

        a.         To assist in demonstrating that they had the INTENT to distribute controlled substances as charged, as opposed to consuming them, and they did not join an agreement to receive/distribute controlled substances/contraband by ACCIDENT or MISTAKE or otherwise inadvertently;

        b.         To assist in demonstrating the MOTIVE they had to acquire and distribute controlled substances/contraband as part of their drug trafficking business – the great majority of people have absolutely no MOTIVE whatsoever to acquire and/or distribute narcotics/contraband because the great majority of people are not engaged in the business of drug trafficking, but the evidence noticed herein demonstrates that Mr. Landfried and Mr. Curran had that MOTIVE because they were engaged in that business;

        c.         To assist in establishing their KNOWLEDGE that they were possessing and distributing controlled substances/contraband and of how to operate their drug trafficking business, including how to surreptitiously introduce controlled substances/contraband into prisons and how to surreptitiously receive the corresponding proceeds following the distribution of the controlled substances/contraband inside prisons;

13

      d.           To assist in demonstrating the OPPORTUNITY they had to operate their drug trafficking business in prison and to meet co-conspirators while serving their federal prison sentences; and

      e.           To IMPEACH their testimony if they choose to testify."

Mr. Curran was informed that evidence of his continued drug trafficking, including K2 trafficking, following his indictment would be offered "for at least the following purposes:

      a.           To assist in demonstrating that he had the INTENT to distribute the controlled substances/contraband as charged, as opposed to consuming them, and he did not join an agreement to receive/distribute controlled substances/contraband by ACCIDENT or MISTAKE or otherwise inadvertently;

      b.           To assist in demonstrating the MOTIVE he had to acquire and distribute controlled substances/contraband as part of his drug trafficking business – the great majority of people have absolutely no MOTIVE whatsoever to acquire and/or distribute narcotics/contraband because the great majority of people are not engaged in the business of drug trafficking, but the evidence noticed herein demonstrates that Mr. Curran had that MOTIVE because he was engaged in that business;

      c.           To assist in establishing his KNOWLEDGE that he was possessing and distributing controlled substances/contraband and of how to operate a drug trafficking business, including how to surreptitiously introduce controlled substances/contraband into prisons and how to surreptitiously receive the corresponding proceeds following the distribution of the controlled substances/contraband inside prisons; and

d.      To assist in demonstrating his MODUS OPERANDI of using the assistance of a family member to receive and forward K2 paper/contraband to him and to also receive K2 trafficking proceeds on his behalf."

In Documents 3433 and 3437, both defendants moved to exclude evidence of their prior convictions.   Mr. Curran also moved to exclude evidence of his continued K2 trafficking following his indictment.   Their motions are based on the claim that the challenged evidence is not admissible under F.R.E. 404(b).

Under Federal Rule of Evidence 404(b), the challenged evidence is not admissible to prove a defendant's "character in order to show that on a particular occasion [he] acted in accordance with the character."   Under Rule 404(b), however, the challenged evidence may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   If evidence is properly offered and linked to a permissible purpose, such as one of those listed in the preceding sentence, it is admissible even if the evidence could also support an inference that a defendant has bad character or a propensity to engage in criminal conduct. *See, e.g., United States v. Norweathers*, 895 F.3d 485, 491 (7th Cir. 2018) (explaining that "Rule 404 does not require exclusion simply because a propensity inference can be drawn. Rather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established only through the forbidden propensity inference") (cleaned up); *United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015) (stating that "when other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity") (cleaned up).

Mr. Curran was convicted and sentenced in 2012 in federal court for conspiring to distribute a controlled substance.   Mr. Landfried was convicted and sentenced in 2010 in federal

court for conspiring to distribute a controlled substance. Both defendants were incarcerated serving their drug trafficking sentences in 2017 and 2018 when they participated in the additional drug trafficking conspiracy charged in the Superseding Indictment.

Longstanding Third Circuit law supports the admission of the evidence of the defendants' prior drug trafficking conspiracy convictions during their upcoming drug trafficking conspiracy trial. The Third Circuit has repeatedly and consistently upheld the admission of a prior drug trafficking conviction in a separate trial for additional drug trafficking. For example, in *United States v. Lee*, 573 F.3d 155, 158, 166 (3d Cir. 2009), the Third Circuit bluntly stated that "[the defendant's] prior drug trafficking conviction was properly admitted as evidence that [the defendant] intended to distribute any drugs in his possession." Evidence of prior drug trafficking is even more probative when the drug trafficking at issue involved a conspiracy. As the Third Circuit stated in *United States v. Cross*, 308 F.3d 308, 324 (3d Cir. 2002), "Rule 404(b) evidence is especially probative when the charged offense involves a conspiracy. . . . For this reason, the Government has broad latitude to use 'other acts' evidence to prove a conspiracy."

Third Circuit law also recognizes that the admissibility of evidence of prior drug trafficking is not dependent on the types of illegal drugs involved. In *United States v. Givan*, 320 F.3d 452, 455, 460–62 (3d Cir.2003), the defendant was charged with conspiring to distribute heroin and with possessing heroin with intent to distribute. At his trial in 2000, the defendant's conviction in 1993 for cocaine distribution was admitted pursuant to Rule 404(b). *Id*. at 460-61. The defendant was subsequently convicted of the heroin conspiracy charge and he appealed claiming that admission of the 1993 conviction was error. *Id*.

The Third Circuit in *Givan* rejected the defendant's claim. *Id*. at 460-62. In doing so, the court noted that evidence of such a prior drug trafficking conviction was probative of whether the

defendant was aware of the presence of heroin and negated any innocent association claim. *Id*. Moreover, the court summarily discounted the significance of the fact that different illegal drugs were involved in the 1993 (i.e., cocaine) and 2000 (i.e., heroin) cases. *Id*. at 462.   The court noted that "[i]t is not as if dealing in cocaine and heroin are mutually exclusive endeavors." *Id*.

The Third Circuit's opinion in *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014), does not support the pending motions.   The facts in *Caldwell* are fundamentally different from the facts at issue in this case.   *Caldwell* involved the admissibility of prior unlawful firearm possession convictions in a trial for felon in possession of a firearm. *Id*. at 271-73.   Neither intent, nor any of the other purposes for which the challenged convictions will be offered in this case, were at issue in *Caldwell*.   The prosecution in a felon in possession case is not required to establish what a defendant intended to do with the firearm; whereas, in this case, intent relative to the conspiracy and the drugs involved will be an element that must be proven beyond a reasonable doubt.   It is worth pointing out that evidence of intent will need to be presented regardless of whether the defendants plan to primarily dispute intent at trial because the prosecution must account for what the jury may debate following its instructions regardless of what the defendants choose to primarily dispute.

Evidence of prior drug trafficking has continued to be properly admitted in the Third Circuit and in this district after *Caldwell*. *See, e.g., United States v. Garner,* 961 F.3d 264, 273-74 (3d Cir. 2020) (affirming admission of evidence of a 2007 drug trafficking conviction during a 2018 drug trafficking trial because the prior conviction could, among other things, show that the defendant had sufficient knowledge to identify a controlled substance); *United States v. Jackson*, 619 Fed.Appx. 189, 193-94 (3d Cir. 2015) (unpublished) (upholding, post-*Caldwell*, the admission of evidence of prior drug transactions in a drug distribution case under Rule 404(b) and explaining

17

that "we have held that evidence of past distribution is relevant to prove intent to distribute in a later distribution trial, even to the extent of admitting prior convictions as well as uncharged conduct") (quotation marks omitted); *United States v. Moffitt*, 601 Fed.Appx. 152, 155 (3d Cir. 2015) ("Given that Moffitt challenged his intent to participate in the drug distribution scheme in this case, it was not an abuse of discretion for the District Court to determine that his past acts of drug distribution were relevant to whether he had that intent here."); *United States v. Landfried*, 2021WL5417515, at *1-2 (W.D.Pa. 2021) (explaining that "[t]he Third Circuit has held that a prior drug-trafficking conviction can be used to establish that the defendant had personal knowledge about how to identify a narcotic, and how to package, price, and purchase it. In short, this prior conviction could show that [the defendant] had the intent and knowledge to sell any drugs in his possession, and intent and knowledge are critical to proving a conspiracy") (cleaned up).

Mr. Curran's continued K2 trafficking following his indictment in this case is also admissible under Rule 404(b).  Evidence of other bad acts is admissible under Rule 404(b) regardless of whether the acts occurred before or after indictment. *United States v. Bergrin*, 682 F.3d 261, 281 n.25 (3d Cir. 2012) ("Rule 404(b) refers to evidence of crimes, wrongs, or other acts, saying nothing about whether the act in question is a 'prior' or 'subsequent' act. That makes sense because light can be shed on motive, intent, and the other issues listed in Rule 404(b)(2) as much by a subsequent course of behavior as it can by a prior one.").

Moreover, evidence of a defendant's actions not only post-indictment but also post-conspiracy can be particularly relevant to critical trial issues such as knowledge and intent.  As a panel of the Third Circuit held last year in *United States v. Wheeler*, 2021WL4129731, at *14 (3d Cir. 2021), "[e]vidence is not irrelevant merely because it arises post-conspiracy, particularly when the evidence sheds light on a defendant's intent. . . . Such evidence is properly admitted and the

passage of time and purportedly changed circumstances are proper issues for counsel to argue to the jury, and for the jury to consider in weighing the evidence." (cleaned up).

Based on the foregoing, it is apparent that the pending motions rely more on the application of F.R.E. 403 than on F.R.E. 404(b). Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Attempts to exclude relevant evidence by relying on Rule 403 are often unsuccessful because, by requiring prejudice to not only outweigh but to "substantially" outweigh probative value, the rule "creates a presumption of admissibility." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).

"[W]hen evidence is highly probative," like the challenged evidence in this case, "even a large risk of unfair prejudice may be tolerable" under Rule 403. *Id*. Moreover, Rule 403 addresses only "unfair prejudice" which is much more than evidence "suggesting guilt" or evidence that is "undesirable from the defendant's perspective." *Id*. at 324 n.23. "'Unfair prejudice' means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*.

As detailed in the prosecution's Rule 404(b) notice, the challenged evidence will be offered for several proper purposes that can be met without relying on a bad character/propensity inference. Two of the most prominent issues at trial will be (1) the defendants' knowledge that they were conspiring to distribute a controlled substance, as opposed to a non-controlled substance; and (2) the defendants' intent to distribute, as opposed to consume, a controlled substance. In light of the prominence of these trial issues, the relevance of the challenged evidence is clear.

For example, the defendants' prior drug trafficking conspiracy convictions from 2010 and

19

2012 demonstrate that they were in position to have the knowledge, in 2017 and 2018, that they were conspiring to distribute a controlled substance and were not mistaken as to the nature of a substance. It would be remarkably unfair to require the members of the jury to make a factual judgment about the defendants' controlled-substance knowledge while simultaneously excluding evidence from them that is directly relevant to that judgment. It would be similarly unfair to require jurors to make a factual judgment about intent to distribute while simultaneously excluding evidence from them that is directly relevant to that judgment.

Mr. Curran's continued K2 trafficking following his indictment in 2019 is also directly relevant to, among other things, his intent to distribute during the conspiracy in 2017 and 2018. It will likely be asserted, in one manner or another, that Mr. Curran was a consumer of K2 paper to suggest that he did not have the intent to distribute as part of the charged conspiracy. Consumption and distribution are not mutually exclusive endeavors. His continued K2 trafficking following his indictment will demonstrate that he had an intent to distribute K2 in addition to consuming it at times.

Moreover, trial evidence will demonstrate that Mr. Curran involved a female family member in his K2 trafficking scheme while at FCI-McDowell in 2017 and 2018. This involvement included contact with Noah Landfried, the external K2 producer, and the receipt/transfer of proceeds. The challenged post-indictment K2 trafficking evidence will demonstrate that Mr. Curran's post-indictment modus operandi was similar to his pre-indictment modus operandi regarding involvement of a female family member in his scheme.

Knowledge and intent are classic factual judgments that often require jurors to focus on circumstantial evidence. Excluding the challenged evidence would unfairly distort the circumstances. Admission of the evidence would allow the jury to make factual judgments about

knowledge and intent based on the actual circumstances without unfairly prejudicing the defendants. Any potential for unfair prejudice can be adequately addressed through a limiting jury instruction.

## V.   MOTION TO EXCLUDE REFERENCE TO "K2" (Doc. 3442)

Defendant David Curran filed Document 3442 which is a motion to exclude the use at trial of the term "K2" to refer to synthetic cannabinoid controlled substances. According to the motion, use of the chemical names of each of the controlled substances being referenced is required, instead of the use of an "umbrella" term like K2, to "ensure the jury understands which distinct drug is being discussed throughout the course of trial." This claim is based on a fundamental misunderstanding of the law. The pending motion lacks merit and should be denied.

The prosecution does not have to prove, and the jury does not have to find, that Mr. Curran conspired to distribute any particular kind or quantity of a controlled substance to establish his guilt at Count One of violating 21 U.S.C. § 846. Count One charges a conspiracy to distribute a controlled substance. It specifies certain controlled substances, including Schedule I synthetic cannabinoid controlled substances, for the purpose of minimum and maximum sentencing as required by *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Alleyne v. United States*, 570 U.S. 99, 103 (2013).

The jury will be asked to make a determination about Mr. Curran's guilt based on whether he conspired to distribute a controlled substance, not a specific synthetic cannabinoid controlled substance. The prosecution will need to establish his knowledge that the conspiracy involved a controlled substance, not a specific synthetic cannabinoid controlled substance. To satisfy *Apprendi* and set the statutory maximum sentence, the jury will also be asked to determine if a Schedule I or II controlled substance was involved in the conspiracy, not whether Mr. Curran knew

the kind or quantity of that controlled substance.

The points made in the preceding paragraphs are well established.   For example, in *United States v. Williams*, 974 F.3d 320, 363-64, 366, 372 (3d Cir. 2020), the Third Circuit explained that violations of 21 U.S.C. §§ 841(a)(1) and 846 do not require the prosecution, in establishing guilt, to prove that a specific controlled substance was involved as long as it proves that the crime involved a controlled substance and the defendant knew that it involved a controlled substance. As further explained in *Williams*, in setting a maximum sentence, the prosecution must prove the *Apprendi* facts of what kind and/or quantity of controlled substance was involved in the offense, but the prosecution is not required to prove a defendant's knowledge of the specific kind and quantity. *Id.*; *see also United States v. Achey*, 943 F.3d 909, 913 (11th Cir. 2019); *United States v. Pierce*, 940 F.3d 817, 823 n.8 (2d Cir. 2019); *United States v. Anaya*, 727 F.3d 1043, 1051 (10th Cir. 2013); *United States v. Anthony Smith*, 2:19-cr-00008-NR, Doc. 3420, p. 2 (W.D.Pa. April 29, 2022).

Based on the foregoing law, use of the umbrella term "K2" at trial, as well as use of the umbrella term "controlled substance," will be proper.   Paper saturated with synthetic cannabinoid controlled substances is consistently and correctly referred to as "K2" by inmates and corrections officers – even by the United States Sentencing Commission as noted above.   It would unnecessarily and unnaturally restrict the presentation of evidence to force witnesses to refer to K2 paper as something other than what it is, particularly when guilt will not depend on whether Mr. Curran was aware of the chemical name of any controlled substance he conspired to distribute. To the extent Mr. Curran desires to make a point to the jury about the possibility of K2 paper not containing a controlled substance, he can attempt to do so through direct or cross-examination testimony.   Any potential for confusion about the controlled status of particular synthetic

cannabinoid substances will be addressed through jury instructions listing the chemical names and the dates they became controlled substances.

## VI.    MOTION FOR BILL OF PARTICULARS (Doc. 3445)

Defendant Ross Landfried filed Document 3445 which is a motion for a bill of particulars regarding Count Two of the Superseding Indictment.   Count Two charges Mr. Landfried with conspiring to launder drug trafficking proceeds during the same time period that he conspired to distribute a controlled substance as charged in Count One.   The pending motion seeks to compel the prosecution to prepare and provide a bill of particulars specifying which financial transactions were part of the money laundering conspiracy, the date of the conspiracy, the scope of the conspiracy, and which particular controlled substances made up the underlying specified unlawful activity related to each identified transaction.

The motion is based on faulty assumptions about what the prosecution must plead and prove to establish a money laundering conspiracy and fails to account for what information the prosecution has already disclosed to Mr. Landfried.   That information includes not only the discovery material, but the actual trial exhibits that were selected from the discovery material. The trial exhibits include the specific BOP records for inmate accounts that were used by Mr. Landfried and his co-conspirators to conduct financial transactions in furtherance of the money laundering conspiracy.   The prosecution is under no obligation to now highlight its trial strategy for Mr. Landfried by identifying which transactions it considers to be the most important.

In demanding that the prosecution specify which financial transactions were part of the money laundering conspiracy, the motion assumes that the prosecution must prove that a financial transaction occurred in furtherance of the money laundering conspiracy.   This assumption is incorrect.   Count Two charges a money laundering conspiracy – an agreement to engage in money

laundering – not a completed act of money laundering.   The prosecution is not even required to prove an overt act in furtherance of the conspiracy. *Whitfield v. United States*, 543 U.S. 209, 214 (2005).   *A fortiori* the prosecution is not required to prove that a financial transaction occurred.

In demanding that the prosecution identify, prior to trial, the date of the conspiracy, the scope of the conspiracy, and which particular controlled substances made up the underlying specified unlawful activity related to each identified transaction, the motion largely ignores the information contained within Count Two and assumes that the prosecution has an obligation to plead specific details of how a money laundering conspiracy operated.   Count Two identifies the date and scope of the conspiracy.   The prosecution has no obligation to plead the specific details of how a money laundering conspiracy operated.   *A fortiori* the prosecution has no obligation to plead the specific details of how a related drug trafficking conspiracy operated.

Furthermore, the prosecution has provided Mr. Landfried with specific details of how the Count Two money laundering conspiracy operated and how the related Count One drug trafficking conspiracy operated.   Those details were provided as part of the discovery material.   The details were further refined as part of the trial exhibits that have already been provided to Mr. Landfried.

In assessing the merit of a motion for a bill of particulars, a court should consider the information conveyed to a defendant through the indictment as well as through the discovery process and any other similar means. *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005); *United States v. Reed*, 2019 WL 80252, at *3 (W.D.Pa. 2019) ("[W]hen ruling on [a motion for a bill of particulars], this Court must consider all information that has been disclosed to Defendants in the course of the prosecution, whether or not included in the indictment.").

Orders compelling the prosecution to provide a bill of particulars are rare because a bill of particulars should not be used as a discovery tool to determine the prosecution's outline of its case

and how certain defendants fit within it. *See, e.g., United States v. Reed,* 2019 WL 80252, at *3-4 (W.D.Pa. 2019) (denying similar motion for bill of particulars relating to drug conspiracy count charging multiple defendants with distributing multiple drugs over four-year period).

An indictment is sufficient "if, when considered in its entirety, it adequately informs the defendant of the charges against [him] such that [he] may prepare a defense and invoke the double jeopardy clause when appropriate." *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005). A bill of particulars should be ordered "[o]nly where an indictment fails to perform these functions, and thereby significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial. . . ." *Id.* at 771–72 (citations and punctuation omitted).

The pending motion should be denied based on the foregoing facts and law. A bill of particulars should not be ordered based on incorrect assumptions about what the prosecution must plead and prove relative to Count Two. A bill of particulars should also not be ordered when the requested details have been provided through discovery and the disclosure of trial exhibits.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

s/ Craig W. Haller
CRAIG W. HALLER
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
(412) 644-5870 (Fax)
craig.haller@usdoj.gov
PA ID No. 87714